1
2
3
4
5
6
7
8

# United States District Court
# Central District of California
# Western Division

11

| | |
|---|---|
| MICHAEL EASLEY, *et al.*, | CV 14-00117 TJH (SPx) |
| Plaintiffs, | |
| v. | Order |
| | and |
| CITY OF RIVERSIDE, *et al.*, | Judgment |
| Defendants. | [JS-6] |

The Court, having ordered and conducted an evidentiary hearing on the issue of qualified immunity, has considered the evidence introduced by the parties and the briefs filed in lieu of closing arguments, now, issues the following Order:

Qualified immunity must be resolved at the earliest possible stage in litigation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The evidentiary hearing was, in effect, a *sua sponte* summary judgment motion.  *LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th. Cir. 2000).

Qualified immunity shields a police officer from civil liability when his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *See Brittain v. Hansen*, 451 F.3d 982, 987 (9th Cir. 2006).  The Court must engage in a two-part inquiry to consider whether a police

1    officer is entitled to qualified immunity. *See Brittain*, 451 F.3d at 988.  The Court has

2    the discretion to decide which prong to address first, in light of the particular

3    circumstances of each case. *Pearson*, 555 U.S. at 236-42.  The first question is

4    whether a constitutional right was violated based on the facts presented. *See Brittain*,

5    451 F.3d at 988.  The second question, which the Court will address first, is whether

6    that constitutional right was "clearly established." *See Brittain*, 451 F.3d at 988.

7         "Clearly established," for purposes of qualified immunity, means that "the

8    contours of the [constitutional] right must be sufficiently clear that a reasonable official

9    would understand that what he is doing violates that right; this is not to say that an

10   official action is protected by qualified immunity unless the very action in question has

11   previously been held unlawful, but it is to say that in the light of preexisting law the

12   unlawfulness must be apparent." *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999).  This

13   analysis is objective and is considered in light of the specific factual circumstances of

14   each case. *See Brittain*, 451 F.3d at 988.   Further, the officer, here, Silvio Macias

15   would be entitled to qualified immunity if the Court determines that police officers of

16   reasonable competence could disagree as to whether Officer Macias's use of force

17   against Easley was unlawful under the circumstances. *See Brittain*, 451 F.3d at 988.

18        To determine whether Officer Macias's use of force was reasonable, the Court

19   must consider the following non-exhaustive factors: (1) Whether Easley posed an

20   immediate threat to the safety of Officer Macias or others; (2) The severity of the crime

21   at issue; and (3) Whether Easley was actively resisting arrest or attempting to evade

22   arrest. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).  The most important of

23   those factors is whether Easley posed an immediate threat to the safety of Officer

24   Macias or others. *See Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005).

25        It is well established that an officer may not shoot a fleeing suspect unless the

26   suspect poses a serious threat to the officer or others. *Tennessee v. Garner*, 471 U.S.

27   1, 11 (1985).  Further, while an officer may feel threatened before shooting a suspect,

28   "such a statement is not enough; there must be objective factors to justify such a

1    concern." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013).  Accordingly, the

2    Court must consider the totality of the circumstances, "otherwise [the fact] that a person

3    was armed would always end the inquiry." *Glenn v. Washington Cnty.*, 673 F.3d 864,

4    872 (9th Cir. 2011).

5            Moreover, Easley's mere possession of a gun does not automatically render

6    Officer Macias's use of force reasonable.  *See George*, 736 F.3d at 838.  However,

7    when a suspect points a gun in an officer's direction, the officer is entitled to respond

8    with deadly force and that use of force would be entitled to qualified immunity.  *See*

9    *Long v. City and Cnty. of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007).  Furthermore,

10   an officer is permitted to use deadly force to prevent an escape when an officer "has

11   probable cause to believe that the suspect poses a threat of serious physical harm, either

12   to the officer or others."  *See Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010).

13           Whether the use of force was reasonable is highly fact-specific, but the inquiry

14   is an objective one.  *Wilkinson*, 610 F.3d at 550.  Here, on December 22, 2011, at

15   approximately 8:20 p.m., in Riverside, California, Stephania Session was driving her

16   pink 2000 Chevrolet Monte Carlo with dark tinted windows in a high-crime area, and

17   Michael Easley was her passenger.  Officer Silvio Macias and his partner, Officer

18   Anthony Watkins, were finishing a traffic stop when they first observed Session's car.

19   As Officer Watkins positioned the marked patrol car behind Session's car, Officer

20   Macias observed Easley holding his pants' waistband as he ran from Session's car.

21   Officer Watkins, without knowing what Easley was holding, yelled "gun."  Officer

22   Macias pursued Easley on foot while Officer Watkins stayed with Session.

23           Easley testified that his right hand was holding up his baggy pants, and that as he

24   was running he reached across his body with his left hand and took out the handgun that

25   was in his right front pants pocket.  Easley, further, testified that after he took out the

26   gun he threw it with his left hand "like a frisbee" over a truck and a house to avoid

27   being caught with the gun.  Easley confirmed that when he threw the gun "like a

28   frisbee" he reached into his right pant pocket with his left hand, raised the gun across

1    his body, and then threw the gun forward, away from his body with his left hand.  Even

2    though he did not see Easley throw the gun, Officer Macias testified that he did not

3    shoot Easley earlier because Easley was not a threat to Officer Macias until Officer

4    Macias saw the profile of the gun on the right side of Easley's body.  After Officer

5    Macias saw the profile of the gun, he fired three shots, all of which hit Easley.  There

6    was no evidence that Officer Macias did not see the profile of Easley's gun.

7        The only fact in dispute is whether Easley was shot immediately before or

8    immediate after the gun left his hand.  This dispute is not material.  Accordingly to

9    Easley, between two and four seconds had passed between when he threw the gun and

10    when he got shot.  Whether Easley threw the gun between two and four seconds before,

11    or as, he was shot does not render Officer Macias's conduct unreasonable.  "[T]he

12    Fourth Amendment does not require omniscience, and absolute certainty of harm need

13    not precede an act of self-protection."  *Wilkinson*, 610 F.3d at 553.  Additionally,

14    "[t]he calculus of reasonableness must embody allowance for the fact that police officers

15    are often forced to make split-second judgments – in circumstances that are tense,

16    uncertain, and rapidly evolving – about the amount of force that is necessary in a

17    particular situation."  *Graham*, 490 U.S. at 396-97.  Further, Officer Macias's expert,

18    Robert James Fonzi, testified, without controversy, that it takes time to identify a threat,

19    process it, make a decision, and then execute a response.

20        Here, given the facts and circumstances at the time of the shooting and that

21    Easley admitted that he possessed a gun, pulled it out of his pants while he was actively

22    evading Officer Macias, and the profile of the gun was visible to Officer Macias, a

23    reasonable officer confronting the scene could reasonably believe that Easley posed a

24    serious and deadly threat to Officer Macias when Easley removed the gun from his

25    pants and lifted the gun to a point where Officer Macias could see the gun's profile

26    during the foot pursuit.  *See Long*, 511 F.3d at 906.

27        It is irrelevant whether Officer Macias saw the profile of the gun while Easley

28    was throwing it away or while turning to point the gun at Officer Macias.  Under either

1  scenario, Officer Macias acted reasonably given the very short time passage of a few
2  seconds.  Officer Macias did not shoot Easley until he perceived Easley as a threat,
3  which is when Officer Macias saw the profile of the gun on the right side of Easley's
4  body. Officer Macias's perception is consistent with Easley's testimony that he reached
5  across his body with his left hand into his right pants' pocket and pulled out the gun.
6  Upon seeing the profile of the gun, Officer Macias could not have know Easley
7  intentions.  While Easley testified that his intentions were to throw the gun away "like
8  a frisbee," which he did, officers of reasonable competence could have believed that
9  Easley could have positioned the gun more in Officer Macias's direction.  *See Brittain*,
10  451 F.3d at 988.

11      Accordingly, Officer Macias did not violate Easley's "clearly established"
12  constitutional right.  Therefore, the Court does not need to reach the question of
13  whether a constitutional right would have been violated on the facts alleged.  *See*
14  *Pearson*, 555 U.S. at 236-42.  Officer Macias is entitled to qualified immunity as a
15  matter of law.  *See Long*, 511 F.3d at 906.

16      It is Ordered, *sua sponte*, that summary judgment on Easley's claim for
17  violation of 42 U.S.C. § 1983 be, and hereby is, Granted in favor of Officer Macias.

18      It is further Ordered, Adjudged, and Decreed that Judgment be, and
19  hereby is, Entered in favor of Defendant Silvio Macias and against Plaintiff Michael
20  Easley on Easley's claim for violation of 42 U.S.C. § 1983.

21      It is further Ordered that the Court declines to exercise supplemental
22  jurisdiction over the remaining state law claims.

23      It is further Ordered that the remainder of this action be, and hereby is,
24  Dismissed without prejudice.

25  Date: June 1, 2016

26

27                          Terry J. Hatter, Jr.
                          Senior United States District Judge
28